IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SYCAMORE FAMILY LLC AND LELAND SYCAMORE,<br><br>         Plaintiffs,<br>v.<br><br>EARTHGRAINS BAKING COMPANIES, INC.,,<br>         Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [61] SYCAMORE FAMILY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART [62] EARTHGRAINS BAKING COMPANIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:13-CV-00639-DN<br><br>District Judge David Nuffer |
| EARTHGRAINS BAKING COMPANIES, INC.,<br><br>         Counterclaimant,<br>v.<br><br>SYCAMORE FAMILY LLC, LELAND SYCAMORE, and JERI SYCAMORE,<br><br>         Counterclaim Defendants. | |

## CASE OVERVIEW

In March, 2011, EarthGrains Baking Companies, Inc.[1] ("EarthGrains") obtained a

judgment against Sycamore Family Bakery, Inc., and Leland Sycamore ("Leland").[2]  In June,

2013, the Sycamore Family LLC ("LLC") filed the present case, requesting declaratory judgment

---

[1] Suit was initially filed by Sara Lee Corporation. EarthGrains, however, acquired Sara Lee Corporation during the lawsuit, and therefore was substituted as the real party in interest.

[2] EarthGrains is a judgment creditor of Leland. In June, 2009, EarthGrains filed a lawsuit against Leland for breach of contract, trademark infringement, and unfair competition. On April 4, 2011, the court found Leland liable on EarthGrains's claims. Ultimately, EarthGrains obtained a judgment against Leland in excess of $5.7 million.

that Leland has relinquished most of his membership interest in the LLC, thus precluding EarthGrains from collecting on its judgment from Leland's membership interest in the LLC. EarthGrains, opposing the LLC's declaratory judgment request, argues that Leland still retains his membership interest.

## CURRENT MOTIONS

On June 13, 2014, the parties filed two partial summary judgment motions. The LLC moved for partial summary judgment[3] on its second cause of action, which seeks a declaratory judgment that a line of credit Leland received was a distribution from the LLC. EarthGrains moved for partial summary judgment[4] on its fraudulent transfer, alter ego, and nominee liability counterclaims.[5] EarthGrains's motion also seeks summary judgment[6] on both of the LLC's declaratory judgment claims.[7] For the reasons set for below, after reviewing the parties' memoranda, the undisputed facts and the relevant legal authorities, EarthGrains's motion for partial summary judgment is hereby GRANTED in part and DENIED in part, and the LLC's motion for partial summary judgment is DENIED. Oral argument is unnecessary.[8]

---

[3] Motion for Partial Summary Judgment and Supporting Memorandum [LLC's Partial Summary Judgment], docket no. 61, filed June 13, 2014.

[4] EarthGrains's Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof [EarthGrains's Partial Summary Judgment], docket no. 62, filed June 13, 2014. Two oppositions were filed in response to EarthGrains's Partial Summary Judgment. The first was Leland Sycamore's Combined Opposition to EarthGrains's Motion for Summary Judgment; Motion to Strike EarthGrains' Motion for Summary Judgment and Joinder in Sycamore's Opposition to EarthGrains's Summary Judgment Motion [Leland's Opposition], docket no. 68, filed July 30, 2014. And the second was Sycamore Family, LLC's and Jeri Sycamore's Memorandum in Opposition [LLC's Opposition] to EarthGrains's Motion for Partial Summary Judgment, docket no. 71, filed Jury 30, 2014. Leland, in his opposition, expressly joins the LLC's Opposition, and therefore, the LLC's Opposition is more often referenced. Where appropriate, however, Leland's Opposition is also referenced.

[5] EarthGrains Baking Companies, Inc.'s Second Amended Answer and Counterclaims [EarthGrains's Counterclaims], docket no. 50, filed February 24, 2014.

[6] LLC's Partial Summary Judgment at 28.

[7] Complaint, docket no. 2-2, filed July 8, 2013.

[8] *See* DUCivR 7–1(f).

BACKGROUND ........................................................................................................... 3
STANDARD OF REVIEW ......................................................................................... 4
EARTHGRAINS'S MOTION FOR PARTIAL SUMMARY JUDGMENT ................................. 5
    I.      Undisputed Facts ......................................................................................... 5
    II.    EarthGrains's Fraudulent Transfer Claims Fail ................................................ 6
        a.    Utah Code Ann. § 25-6-6(1) (transfer without value, insolvent debtor) .... 7
        b.    Utah Code Ann. §25-6-6(2) (transfer for antecedent debt)...................... 14
        c.    Utah Code Ann. § 25-6-5 (transfer with intent to defraud) ..................... 15
    III.   EarthGrains's Alter Ego Claim Fails ............................................................. 17
    IV.   EarthGrains's Nominee Liability Claim Fails ................................................. 19
    V.    EarthGrains is Entitled to Summary Judgment on the LLC's First Claim for
        Declaratory Relief  (invalidity of Leland's relinquishment).............................. 20
    VI.   EarthGrains is Entitled to Summary Judgment on the LLC's Second Claim for
        Declaratory Relief (alleged distribution to Leland) ............................................ 21
LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT................................................. 22
CONCLUSION........................................................................................................ 23

# BACKGROUND

On December 29, 1998, husband and wife, Jeri ("Jeri") and Leland Sycamore formed the

LLC as a Nevada limited liability company. At the time of formation, each received a 48%

membership interest in the LLC, with the remaining 4% interest divided among their four

children.

In 2008, Leland decided to purchase a bakery business. The LLC executed a deed of trust

on the Sycamore Family home to Wells Fargo Bank to secure a loan for Leland. In return,

Leland gave the LLC a promissory note ("Promissory Note") for $2,112,500.00.[9] The note is

dated September 15, 2008. Ultimately, Leland obtained a line of credit from Wells Fargo Bank in

the amount of $2,112,500.[10] The LLC asserts that as additional consideration[11] for the pledge of

the Sycamore Family home, Leland signed a document ("Relinquishment Document")

---

[9] Promissory Note, docket no. 2-2, filed July 8, 2013.

[10] LLC's Partial Summary Judgment at exhibit F.

[11] Complaint ¶ 15.

relinquishing "46% of [his 48%] interest in the Sycamore Family LLC, including [his] position as managing member, if so required, to [his] wife Jeri Lyn Sycamore."[12]

The LLC seeks a declaratory judgment upholding the validity of Leland's relinquishment of 46% of his 48% membership interest in the LLC.[13] Alternatively, in the event that the relinquishment is determined to be invalid, the LLC requests a declaratory judgment that the line of credit extended to Leland was a distribution and asks the court to grant a "catch-up" distribution to the other members of the LLC.[14]

The LLC originally filed this action for declaratory relief in state court on June 7, 2013, naming both EarthGrains and Leland as defendants. This Court, on November 1, 2013, realigned Leland as a co-plaintiff alongside the LLC.[15]

EarthGrains responded to the LLC's complaint and filed a counterclaim[16] against the LLC, Leland and Jeri, alleging, among other things, counterclaims of fraudulent transfer, alter ego, and nominee liability. With this factual backdrop, both pending motions are discussed below.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary

---

[12] Relinquishment Document, docket no. 2-2, filed July 8, 2013.

[13] Complaint at 5.

[14] Complaint at 6.

[15] Memorandum Decision and Order Denying Motion for Remand and Realigning Defendant Leland Sycamore as a Plaintiff, docket no. 43, filed November 1, 2013.

[16] *See* EarthGrains's Counterclaims at 15–17.

[17] Fed. R. Civ. P. 56(a).

judgment."[18] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[19] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20]

## EARTHGRAINS'S MOTION FOR PARTIAL SUMMARY JUDGMENT

EarthGrains argues that it is entitled to judgment as a matter of law on its fraudulent transfer, alter ego, and nominee liability counterclaims.[21] EarthGrains also moves for summary judgment on the LLC's declaratory relief claims. Each of EarthGrains's arguments is discussed in turn below.

### I.     Undisputed Facts[22]

The following relevant factual statements from EarthGrains's motion for summary judgment are undisputed:

1.     The LLC Operating Agreement provides that no member may transfer any interest in the LLC without the "prior written consent of the managers which consent may be withheld in the manager's sole and absolute discretion." Any attempted transfer with [*sic*] such prior written consent is "invalid, null, and void, and of no force or effect."[23]

---

[18] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[19] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[20] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[21] *See* EarthGrains's Counterclaims at 15–17.

[22] Where facts offered by EarthGrains were properly disputed in the LLC's response, those disputes have been removed by editing and the undisputed portions remain. Some minor edits and consolidations have been made to improve readability without changing meaning.

[23] LLC's Opposition at 17 (quoting the Operating Agreement of Sycamore Family, L.L.C., a Nevada limited liability company [Operating Agreement] § 7.1, docket no. 2-2, filed July 8, 2013).

2.      The LLC Operating Agreement provides that the transfer documentation must be duly executed in an acknowledged written instrument.[24]

3.      No member of the LLC gave written consent to the Relinquishment.[25]

4.      There was never any notary or formal acknowledgement of Leland Sycamore's signature on the Relinquishment Document.[26]

5.      The LLC Operating Agreement provides that the transferor and the transferee must agree in writing to indemnify and hold the other managers and members harmless from any loss, liability, claim, or expense arising out of the transfer.[27]

6.      Neither Leland nor Jeri Sycamore ever agreed in writing to indemnify or hold the other managers and members harmless from losses or liabilities arising out of the transfer in the Relinquishment.[28]

7.      The LLC and Jeri were unaware of the Relinquishment Document until late 2012.[29]

## II.     EarthGrains's Fraudulent Transfer Claims Fail

EarthGrains argues that Leland's relinquishment of his 46% membership interest in the LLC is a fraudulent transfer pursuant to the Utah Uniform Fraudulent Transfer Act ("UFTA").[30]

---

[24] *Id.* (citing Operating Agreement § 7.5.1) (The LLC does not dispute this requirement, it only argues that the definition of transfer as defined in § 7.1 is ambiguous and does not apply to transfers among members).

[25] *Id.* (quoting Operating Agreement § 7.1).

[26] *Id.* (referencing Operating Agreement § 7.5.1) (The LLC does not dispute the fact that there was no notary or formal acknowledge of the signature, it only argues that the definition of transfer as defined in § 7.1 is ambiguous and does not apply to transfers among members).

[27] *Id.* at 18 (citing Operating Agreement § 7.5.4) (The LLC does not dispute the requirements of § 7.5.4, it only argues that the definition of transfer as defined in § 7.1 is ambiguous and does not apply to transfers among members).

[28] *Id.* (The LLC does not dispute that Leland and Jeri did not follow the requirements of § 7.5.4 of the Operating Agreement, it only argues that the definition of transfer as defined in § 7.1 is ambiguous and does not apply to transfers among members).

[29] *See* Complaint at 4, docket no. 2-2, filed July 8, 2013; LLC's Opposition at 8.

The UFTA provides several avenues under which a claim for fraudulent transfer may be alleged.[31] EarthGrains claims that the relinquishment of Leland's membership interest is fraudulent under Utah Code Ann. §§ 25-6-5(1)(a), 25-6-6(1), and 25-6-6(2). Under § 25-6-5, the debtor may be liable whether the creditor's claim arose *before or after* the transfer. Section 25-6-6, however, only applies if the creditor's claim arose *before* the transfer. For the reasons stated below, summary judgment on EarthGrains's fraudulent transfer claim is denied as there was never a transfer of Leland's membership interest.

   a. **Utah Code Ann. § 25-6-6(1)** (*transfer without value, insolvent debtor*)

   Utah Code Ann. § 25-6-6(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose *before* the transfer was made or the obligation was incurred if: (a) the debtor made the transfer or incurred the obligation without receiving a *reasonably equivalent value* in exchange for the transfer or obligation; and the debtor was *insolvent* at the time or became insolvent as a result of the transfer or obligation.[32]

   *i.     Transfer*

EarthGrains contends that its claim as a creditor arose before Leland relinquished his membership interest in the LLC. EarthGrains provides two bases for this assertion. First, EarthGrains claims that the evidence shows that the Relinquishment Document was executed sometime in July 2011, and was simply backdated by Leland to read "September 15, 2008."[33] And second, even assuming that the Relinquishment Document was *signed* in 2008, the relinquishment was not effective in 2008 because it did not comply with the LLC Operating

---

[30] *See* Utah Code Ann. § 25-6-1 to -13.

[31] *See id.* §§ 25-6-5 and 25-6-6.

[32] *Id.* § 25-6-6(1) (emphasis added).

[33] EarthGrains's Partial Summary Judgment at 33.

Agreement.[34] EarthGrains contends that "[t]he Relinquishment . . . did not comply with the LLC Operating Agreement, if at all, until 2012 when it was adopted and ratified by both Jeri Sycamore and the LLC—long after EarthGrains' claims arose."[35] The LLC and Jeri argue that the Relinquishment Document became effective the day it was signed—September 15, 2008.[36] Even when taking the facts in the light most favorable to the non-moving party and assuming that the Relinquishment Document was *signed* in 2008, there still remains the issue of whether the *transfer* was effective in 2008 or anytime thereafter.

The LLC Operating Agreement requirements must be met before a member of the LLC may transfer any portion of his or her membership interest.[37] These requirements include, among others:

> § 7.1 – <u>Transfers.</u> Except as otherwise provided in this Section VII, no Member may Transfer all, or any portion of, or any interest or rights in, the Membership Rights owned by the Member, and no Interest Holder may Transfer all, or any portion of, or any interest or rights in, any Interest without the *prior written consent of the Managers* which consent may be withheld in the Managers' sole and absolute discretion. . . . The Transfer of any Membership Rights or Interest in violation of the prohibition contained in this Section VII shall be deemed *invalid, null, and void, and of no force or effect.*[38]
>
> § 7.5 <u>Conditions Precedent.</u> After satisfying the other restrictions contained in Section IV, a Person may Transfer all or any portion of or any interest or rights in the Person's Interest only if the following conditions ("Conditions of Transfer") are satisfied:

---

[34] *Id.* at 39. EarthGrains also argues, in the alternative, that if by chance the relinquishment is characterized as a secured transaction, then the relinquishment was not effective until October 5, 2012, when it was perfected by the filing of a UCC-1 Financing Statement. *See* EarthGrains's Memorandum of Law in Reply to Sycamore Family LLC and Jeri Sycamore's Opposition to EarthGrains's Motion for Partial Summary Judgment at 24 [EarthGrains's Reply to LLC], docket no. 74, filed August 22, 2014. As Plaintiffs make clear, however, the relinquishment is not a secured transaction, but simply "a transfer of property for value." LLC's Opposition at 42.

[35] EarthGrains's Partial Summary Judgment at 39.

[36] *See* LLC's Opposition at 13.

[37] *See* Operating Agreement § 7.

[38] *Id.* § 7.1 (emphasis added).

§ 7.5.1.  A duly executed and acknowledged written instrument of
assignment is filed with the Company.
. . .
§ 7.5.4. The transferor and transferee agree in writing to indemnify
and hold the Managers, Members, and the Company harmless for,
from, and against any loss, liability, claim, or expense arising out of
the Transfer.[39]

The LLC and Jeri do not dispute that these requirements were not met. Rather, they argue

that § 7.1 is ambiguous and appears on its face to apply only to transfers to non-member entities

or individuals.

The LLC's and Jeri's interpretation of § 7.1 is without merit. The plain terms of § 7.1

require prior written consent of the managers before any transfer. There is no limiting language

indicating that the prior written consent only applies to transfers to non-members. Although the

last sentence of § 7.1 specifically addresses the implication of transferring membership rights to

a non-member,[40] this sentence does not create an ambiguity as to the remaining requirements

within the section.[41] Hence, before Leland could relinquish his membership interest, he needed,

among other things, the prior written consent of both managers—Jeri and himself.

The LLC and Jeri further contend that § 12 of the Operating Agreement overrides "§ 7.1

as it provides that Leland could take actions without Jeri's consent and vice versa and that each

acted with power of attorney for the other."[42] Section 12 states:

---

[39] *Id.* § 7.5.

[40] *Id.* § 7.1:

Any Person to whom Membership Rights or an Interest are attempted to be transferred in violation of this Section
VII shall not be entitled to vote on matters coming before the Members, participate in the management of the
Company, act as an agent of the Company, receive allocations or distributions from the Company, or have any other
rights in or with respect to the Membership Rights or Interests.

[41] *See e.g.,* ELM, Inc. v. M.T. Enterprises, Inc., 968 P.2d 861, 863 (Utah Ct. App. 1998) ("Utilizing ordinary rules of
contract construction, if a contract's terms are clear and unambiguous, the court must construe the writing according
to its plain and ordinary meaning.").

[42] LLC's Opposition at 17, 42.

By executing this Agreement, the spouse of each Interest Holder acknowledges and consents to the terms and conditions of this Agreement and agrees, for himself or herself and for the community of himself and herself and the Interest Holder, to be bound hereby. Each spouse of a Interest Holder, for himself or herself and the community of which he or she is a member, hereby irrevocably appoints the Interest Holder as attorney-in-fact with an irrevocable proxy coupled with an Interest to vote on any matter to *come before the Members* or to agree to and execute any amendments of this Agreement without further consent or acknowledgment of the spouse and to execute proxies, instruments, or documents in the spouse's name as may be required to effect the same. This power of attorney is intended to be durable and shall not be affected by disability of the spouse.[43]

Jeri and the LLC argue that "the plain and clear language of . . . [§ 12] itself permits Leland to act in [*sic*] behalf of Jeri in relation to her LLC responsibilities, and accept the transfer of Leland's membership interest."[44] EarthGrains disputes the interpretation that § 12 confers any rights on Leland to act on behalf of Jeri as a *Manager* of the LLC. EarthGrains contends that "the provision in Section 12 of the Operating Agreement only applies to members, not managers, and gives no party any authority to act for another in the capacity of a manager."[45]

Section 12's plain language makes clear that it "appoints the Interest Holder as attorney-in-fact" to (1) "vote on any matter to come before the *Members*"; (2) "agree to and execute any amendments of this Agreement without further consent or acknowledgment of the spouse"; and (3) "to execute proxies, instruments, or documents in the spouse's name as may be required to effect the same."[46] Leland's relinquishment of his membership interest does not fall into any of these three categories of actions. No vote by members was required for the relinquishment— simply the written consent of the managers. The relinquishment did not require an amendment to the Operating Agreement. Finally, Leland never executed any documents, related to the

---

[43] Operating Agreement § 12 (emphasis added).

[44] LLC's Opposition at 42 (citing §12 of the Operating Agreement).

[45] EarthGrains's Reply to LLC at 24.

[46] Operating Agreement § 12 (emphasis added).

relinquishment, in Jeri's name, nor does the Relinquishment Document mention that it is approved by Jeri in her managerial capacity.

Accordingly, the Relinquishment Document—whether or not signed on September 15, 2008—was ineffective to transfer Leland's membership interest to Jeri because the relinquishment did not comply with the strictures of the Operating Agreement. Because it fails to comply with the Operating Agreement, the transfer is "deemed invalid, null, and void, and of no force or effect."[47] The Relinquishment Document, void ab initio, cannot later be made valid by ratification.[48] In effect, Leland currently retains his 48% membership interest in the LLC.

Because EarthGrains has failed to establish that a transfer was ever made, inquiry on this claim could end. However, in the interest of completeness, the remaining elements of §§ 25-6-6(1), 25-6-6(2), and 25-6-5(1)(a) are addressed below.

### ii.    *Reasonably Equivalent Value*

Earthgrains argues that Jeri, the transferee, did not give Leland anything of value in return for Leland's relinquishment of his 46% membership interest. Jeri and the LLC contend that "Jeri did exchange value for the Relinquishment [by allowing] . . . the LLC to take on the risk that the LLC's Real Property could be foreclosed, and she forego [*sic*] any of the Wells Fargo line of credit."[49]

Jeri's and the LLC's argument is unavailing. Jeri, as a member of the LLC, has no ownership interest in the LLC's real property, and has no authority to consent in her individual capacity to encumber the LLC property.[50] Jeri's consent to allow the LLC's real property to be

---

[47] *Id.* § 7.1.

[48] *See Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51 (That which is "void cannot be ratified or accepted[.]").

[49] LLC's Opposition at 9–10.

[50] Nev. Rev. Stat. Ann. § 86.311 ("Real and personal property owned or purchased by a company must be held and owned, and conveyance made, in the name of the company.").

pledged as collateral was, therefore, in her official managerial capacity on behalf of the LLC.[51] Neither Jeri nor the LLC have put forth any evidence to suggest that Jeri has given anything of reasonable value in her individual capacity in exchange for receiving Leland's 46% membership interest.

The argument that Jeri "forego [*sic*] any of the Wells Fargo line of credit," assumes that Jeri had an interest in the line of credit. But the undisputed facts show that there was an exchange of value between Leland and the LLC. Leland executed a promissory note to the LLC for $2,112,500.00 in exchange for the LLC's pledge of collateral for the Wells Fargo line of credit. Jeri and the LLC have failed to provide any factual or legal support for their bare assertion that Jeri had an interest in the line of credit.

### iii.    Insolvent

UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."[52] Also, a debtor is presumed insolvent when the debtor "is generally not paying his debts as they become due."[53]

EarthGrains contends that "[e]vidence showing that a debtor was not able to pay its debts as they become due supports a presumption of insolvency."[54] EarthGrains points out that Leland has not been paying his debts as they have become due; Leland "has repaid neither his loan from

---

[51] *See* Operating Agreement § 5.3.8 ("[T]he Managers shall have power and authority on behalf of the Company: . . . To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Managers may approve, including, but not limited to agreements between the Company and a Manager[.]").

[52] Utah Code Ann. § 25-6-3(1).

[53] *Id.* § 25-6-3(2).

[54] EarthGrains's Combined Memorandum of Law (1) in Opposition to Leland Sycamore's Motion to Strike, and (2) in Reply to Leland Sycamore's Opposition to EarthGrains's Motion for Partial Summary Judgment at 11 [EarthGrains's Reply to Leland], docket no. 72, filed August 22, 2014.

Wells Fargo nor the promissory note to the LLC,"[55] nor "paid nary a cent of the Judgment owed to EartghGrains. . . ."[56] Jeri and the LLC argue that Leland was not insolvent back in 2008. However, as determined above, there was no effective transfer in 2008, and therefore, the insolvency analysis must be made post-2008. Jeri and the LLC claim that the 10th Circuit has recently shed light on the question of Leland's solvency. "Specifically, the 10th Circuit has determined that Leland has held, and continues to hold, the trademark rights for Grandma Sycamore's Bread in the states of Arizona and Nevada."[57] They contend that Leland "presently has a viable claim against EarthGrains for their violation of that trademark right over the past several years."[58] They conclude that "[t]hese two assets together are worth several million dollars."[59]

"Under the UFTA, the level of insolvency necessary to meet the statute requirement is not insolvency in the bankruptcy sense but merely a showing that *the party's assets are not sufficient to meet liabilities as they become due.*"[60] "In order to prove insolvency, a balancing of assets and liabilities must be accomplished and only a showing that the debtor's entire nonexempt property and assets are insufficient to pay his debts rises to the level of insolvency."[61]

Here, there is a dispute between the parties as to what possible assets Leland owned post-2008.[62] Had there been a valid transfer, there would have been an issue of material fact

---

[55] *Id.*

[56] *Id.*

[57] LLC's Opposition at 47.

[58] *Id.*

[59] *Id.*

[60] *Tolle v. Fenley,* 2006 UT App 78, ¶ 24, 132 P.3d 63 (quoting *Meyer v. General Am. Corp.,* 569 P.2d 1094, 1096 (Utah 1977)) (internal quotation marks omitted) (emphasis added).

[61] *Id.* (quoting *Furniture Mfrs. Sales, Inc. v. Deamer,* 680 P.2d 398, 400 (Utah 1984)) (internal quotation marks omitted).

[62] *See* LLC's Opposition at 11.

concerning Leland's solvency based on the foregoing and the lack of sufficient evidence

showing that Leland's assets are insufficient to meet his debt requirements.

**b.  Utah Code Ann. §25-6-6(2)** (*transfer for antecedent debt*)

EarthGrains argues, in the alternative, that a fraudulent transfer occurred pursuant to Utah

Code. Ann. § 25-6-6(2). If "[t]he LLC['s] claims in the Complaint that the Relinquishment was

made as purported consideration for the LLC's pledge of the Sycamore family home as collateral

for a $2.1 million line of credit" are taken as true, then the Relinquishment was a transfer made

for an antecedent debt.[63] The section reads:

> A transfer made by a debtor is fraudulent as to a creditor whose claim
> arose before the transfer was made if the transfer was made to an insider
> for an antecedent debt, the debtor was insolvent at the time, and the insider
> has reasonable cause to believe that the debtor was insolvent.[64]

EarthGrains contends that both Jeri and the LLC are "insiders" of Leland as defined in

the UFTA statute,[65]  and that, "[t]he debt was incurred in 2008, and the transfer (i.e., the

Relinquishment) was made thereafter in or around July 2011, or else become [*sic*] effective in

2012."[66]

Although this section need not be addressed, because there has been no transfer, a brief

analysis is provided for the sake of completeness. Section 25-6-6(2) does not apply under the

facts. The Promissory Note between Leland and the LLC was executed in 2008. There is a

dispute regarding the date that Leland's Relinquishment Document was executed in favor of Jeri.

The parties' date dispute, however, is immaterial. To satisfy the "antecedent debt" requirement,

Leland must have owed a "debt" to Jeri and the debt must have been incurred before the transfer

---

[63] EarthGrains's Partial Summary Judgment at 42.

[64] Utah Code Ann. § 25-6-6(2)

[65] *See id.* § 25-6-2(7).

[66] EarthGrains's Partial Summary Judgment at 42.

was made. The documents are signed by different parties. Leland's debt was with the LLC. His

relinquishment was to Jeri—to whom he had no debt obligations. Utah Code. Ann. § 25-6-6(2)

does not apply.

c. **Utah Code Ann. § 25-6-5** (*transfer with intent to defraud*)

Although this section need not be addressed, because there has been no transfer, a brief

analysis is provided for the sake of completeness. Section 25-6-5 allows relief from a fraudulent

transfer even if EarthGrains's claim arose *after* Leland's relinquishment of his membership

interest. This section states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor, whether the creditor's claim arose before or after the transfer was
> made or the obligation was incurred, if the debtor made the transfer or
> incurred the obligation: (a) with actual intent to hinder, delay, or defraud
> any creditor of the debtor[.][67]

"A creditor who claims a debtor transferred property with actual intent to defraud . . . must

establish that claim by clear and convincing evidence."[68] Section 25-6-5 enumerates factors

which may be considered, among others, to determine if "actual intent" existed. These include

whether:

> (a) the transfer or obligation was to an insider; (b) the debtor retained possession
> or control of the property transferred after the transfer; (c) the transfer or
> obligation was disclosed or concealed; (d) before the transfer was made or
> obligation was incurred, the debtor had been sued or threatened with suit; (e) the
> transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g)
> the debtor removed or concealed assets; (h) the value of the consideration
> received by the debtor was reasonably equivalent to the value of the asset
> transferred or the amount of the obligation incurred; (i) the debtor was insolvent
> or became insolvent shortly after the transfer was made or the obligation was
> incurred; and (k) the debtor transferred the essential assets of the business to a
> lienor who transferred the assets to an insider of the debtor."[69]

---

[67] Utah Code Ann. § 25-6-5(1).

[68] *Bradford v. Bradford*, 1999 UT App 373, ¶ 18, 993 P.2d 887.

[69] Utah Code Ann. § 25-6-5(2).

These factors are termed "badges of fraud."[70] "The badges' value as evidence however, is relative not absolute, and they are considered facts which throw suspicion on a transaction and which call for an explanation."[71] "In other words, '[t]hey are not usually conclusive proof; they are open to explanation.'"[72]

EarthGrains argues that there are numerous badges of fraud associated with Leland's relinquishment of his membership interest to Jeri:

1. Leland Sycamore's purported transfer of his 46% interest in the LLC was made to an insider, his wife Jeri Sycamore.

2. Leland Sycamore continued to serve in a managerial capacity for the LLC despite the Relinquishment. . . .

3. Leland Sycamore lived in the Sycamore home, an LLC asset, for several years after he purportedly signed the Relinquishment.

4. Leland Sycamore is planning to move into a luxury condominium owned by the LLC which has a market rent of $1,200 per month even though he claims to have no assets and no income.

5. Leland Sycamore concealed the Relinquishment which he claims to have signed in 2008, and he did not disclose that purported transfer to anyone else. In particular, he did not disclose the purported transfer to its recipient, his wife, and he did not disclose it to his and the LLC's accountant.

6. In March, 2011, the court issued a summary judgment against Leland Sycamore finding Sycamore liable for trademark infringement and related claims in a trademark infringement action pending in this Court.

7. Sycamore's first disclosure of the Relinquishment took place shortly after the Summary Judgment Order was issued in the ongoing trademark infringement action against him.

---

[70] *Tolle v. Fenley*, 2006 UT App 78, ¶ 27, 132 P.3d 63 (quoting *Dahnken, Inc. v. Wilmarth*, 726 P.2d 420, 423 (Utah 1986)).

[71] *Wasatch Oil & Gas, L.L.C. v. Reott*, 2007 UT App 223, ¶ 33, 163 P.3d 713 (internal quotation marks and citation omitted).

[72] *Id.* (quoting *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct. App. 1989)).

8.  His LLC interest is Leland Sycamore's primary asset and without his asset he is destitute and without any financial means. . . .[73]

The LLC claims that, with the exception of Jeri's status as an insider, there are material issues of fact regarding each of EarthGrains's alleged badges of fraud. The LLC contends that Leland was not insolvent at the time of transfer;[74] there was a non-fraudulent reason for the transfer (*i.e.*, Leland cashed out his interest in the LLC to be able to start a new bakery);[75] there was no litigation pending at the time of transfer;[76] from the time of relinquishment, Jeri has solely been responsible for managing the LLC;[77] and there was reasonable equivalent value exchanged for Leland's relinquishment of his membership interest.[78]

Although some facts support the various badges of fraud, the LLC has presented evidence that creates a genuine issue of material fact as to Leland's actual intent to defraud. At summary judgment, where credibility may not be judges and facts and inferences must be construed in favor of the non-movant, EarthGrains cannot establish undisputed facts which are clear and convincing evidence of Leland's actual intent to defraud.

## III.   EarthGrains's Alter Ego Claim Fails

"Under the equitable 'alter ego' doctrine as it originally evolved, courts would, upon a proper showing, disregard the integrity of the corporation and view a controlling shareholder as indistinguishable from the corporation, thereby permitting creditors of the corporation to reach the assets of a controlling shareholder."[79] In the present case, EarthGrains seeks relief under a

---

[73] EarthGrains's Partial Summary Judgment at 25 (internal citations omitted).

[74] LLC's Opposition at 45–47.

[75] *Id.* at 47–48.

[76] *Id.* at 48.

[77] *Id.* at 48–49.

[78] *Id.* at 49–50.

[79] *Transamerica Cash reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 26 (Utah 1990).

variant of the traditional alter ego doctrine—the reverse piercing theory. This variant theory
allows a third party outsider to reach *corporate* assets to satisfy claims against an *individual*
shareholder.[80]

EarthGrains argues that it may reverse pierce the corporate veil and recover directly from
the LLC because Leland, Jeri and the LLC "have discarded the separate legal existence of the
LLC and have wholly disregarded necessary corporate formalities."[81] EarthGrains cites to
several cases that recognize a reverse piercing theory—none of which are drawn from Utah's
body of jurisprudence. The Tenth Circuit, however, has previously considered a reverse piercing
theory in a case applying Utah law. In *Cascade Energy and Metals Corp.*, the 10th Circuit held
that a Utah court would not reverse pierce the entity veils of the companies.[82] The 10th Circuit
noted, among other things:

> [T]his case largely involves "reverse" piercing, and it is far from clear that Utah
> has adopted the doctrine of "reverse" piercing, much less this particular variant of
> "reverse piercing." *Messick v. PHD Trucking Service, 678 P.2d 791, 793 (Utah
> 1984)* does discuss the "reverse pierce" concept, calling it "little-recognized
> theory," but the Utah court ultimately declined to pierce the corporate veil there
> because of the failure to prove the traditional piercing the corporate veil elements
> . . . .
>
> The reverse-pierce theory presents many problems. It bypasses normal judgment-
> collection procedures, whereby judgment creditors attach the judgment debtor's
> shares in the corporation and not the corporation's assets. Moreover, to the extent
> that the corporation has other non-culpable shareholders, they obviously will be
> prejudiced if the corporation's assets can be attached directly. In contrast, in
> ordinary piercing cases, only the assets of the particular shareholder who is
> determined to be the corporation's alter ego are subject to attachment.
>
> Absent a clear statement by the Supreme Court of Utah that it has adopted the
> variant reverse piercing theory urged upon us here, we are inclined to conclude
> that more traditional theories of conversion, fraudulent conveyance of assets,
> respondeat superior and agency law are adequate to deal with situations where

---

[80] *See Cascade Energy and Metals Corp. v. Banks*, 896 F.2d 1557, 1576, n. 17 (10th Cir. 1990).

[81] EarthGrains's Partial Summary Judgment at 50.

[82] *See Cascade Energy and Metals Corp.*, 896 F.2d at 1576–79.

one seeks to recover from a corporation for the wrongful conduct committed by a controlling stockholder without the necessity to invent a new theory of liability.[83]

The Tenth Circuit, in a later opinion dealing with a similar issue under Kansas law, reaffirmed its previous reluctance to apply a doctrine the state had not adopted:

> [W]e stress that in reciting the litany of problems associated with the [reverse piercing] doctrine, we should not be understood as seeking to dictate or influence the law of corporations in Kansas. Rather, we seek only to lend additional weight to *Cascade's* federal law conclusion that, in the absence of a clear statement of Kansas law by the Kansas courts, we will not assume that such a potentially problematic doctrine already has application in that state.[84]

Similarly, this opinion will follow controlling circuit precedent and decline to apply a reverse piercing theory. EarthGrains has offered no other precedent. Accordingly, EarthGrains's alter ego claim is not viable and summary judgment is denied.

## IV.    EarthGrains's Nominee Liability Claim Fails

EarthGrains contends, in the alternative, in the event the transfer to Leland is found to be effective, that Jeri holds Leland's transferred assets as a nominee.[85] In response, the LLC argues that nominee liability theory is not applicable to the facts of this case because it "is a legal doctrine which applies to taxpayers who are attempting to avoid a tax lien or levy."[86] EarthGrains's reply does not provide any authority to controvert the LLC's argument that nominee liability is a legal doctrine limited to the tax liability arena. Accordingly EarthGrains has effectively abandoned this claim. Summary judgment on this theory is denied.

---

[83] *Id.*

[84] *Floyd v. I.R.S. U.S.*, 151 F.3d 1295, 1300 (10th Cir. 1998).

[85] *See* EarthGrains's Counterclaim at 17–18; *see also* EarthGrains's Partial Summary Judgment at 28.

[86] LLC's Opposition at 57.

### V. EarthGrains is Entitled to Summary Judgment on the LLC's First Claim for Declaratory Relief (*invalidity of Leland's relinquishment*)

EarthGrains seeks summary judgment against the LLC on its first claim for declaratory relief (the validity of Leland's relinquishment of his membership interest).[87] EarthGrains contends that summary judgment on this claim is appropriate "on grounds that the Relinquishment is not valid or enforceable because it constitutes a fraudulent transfer under applicable state laws."[88] This reason for relief is not appropriate because there is no fraudulent transfer. Leland's attempted relinquishment of his membership interest is void ab initio, and thus there is no transfer to analyze under the UFTA.[89] But the Complaint's claim that "the relinquishment substantially complies with the requirements of the operating agreement[,]"[90] and is "valid"[91] cannot succeed. The Complaint correctly alleges:

> 28. A determination of the validity or invalidity of the relinquishment . . . will terminate the controversy between the parties regarding the amount of Leland's interest in the Sycamore Family LLC.
> 29. Declaratory relief is necessary and appropriate at this time so that the parties can determine their rights under the circumstances.[92]

As this opinion finds, the Relinquishment Document did not comply with the Operating Agreement; the Operating Agreement makes the Relinquishment Document "invalid, null, and void, and of no force or effect";[93] and the LLC cannot obtain a declaration of validity. EarthGrains is therefore entitled to summary judgment against the LLC on this claim for a

---

[87] EarthGrains's Partial Summary Judgment at 28.

[88] *Id.*

[89] *See* supra section II(a)(i).

[90] Complaint ¶ 26.

[91] Complaint ¶ 27.

[92] Complaint ¶¶ 28, 29.

[93] *Id.* § 7.1.

declaration of validity. Having submitted the matter for declaration, the LLC receives a declaration that the Relinquishment Document is not valid.[94]

## VI. EarthGrains is Entitled to Summary Judgment on the LLC's Second Claim for Declaratory Relief (*alleged distribution to Leland*)

EarthGrains seeks summary judgment on the LLC's second, and alternative, claim for declaratory relief.[95] In its second claim, the LLC requests—in the event the relinquishment is determined to be invalid—a declaratory judgment that the funds received by Leland from Wells Fargo Bank be considered a distribution to Leland and not a loan. EarthGrains argues that the relief sought by the LLC is flawed for at least three reasons: (1) "if Leland Sycamore has not properly paid the interest and principal outstanding on the Promissory Note, then the LLC's right to relief rests in a claim for breach of contract against Mr. Sycamore[;]" (2) "all of the members of the LLC are not joined in this action. . . . Thus, any relief accorded under the alternative claim of the LLC's Complaint would be inappropriate since necessary parties are not joined[;]" and (3) "the 'catch-up' distribution that the LLC seeks to effect is inconsistent with the Utah LLC Act."[96]

For the reasons explained more fully below in the following analysis of the LLC's Motion for Partial Summary Judgment, EarthGrains's motion on this claim is GRANTED because the plain and clear language of the Promissory Note—and the absence of any argument challenging its sufficiency—demonstrates that the funds received by Leland through the line of credit and the encumbrance of the LLC's real property were a loan, and not a distribution.

---

[94] *See* 28 U.S.C.A. § 2201 (A court "may declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

[95] EarthGrains's Partial Summary Judgment at 28.

[96] *Id.* at 55–60.

### LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The LLC seeks partial summary judgment on its alternative declaratory relief claim that the funds paid to Leland by Wells Fargo were a distribution "if the relinquishment and accompanying promissory [note] are invalid."[97] If the funds were a distribution, the LLC alleges that Nevada law and the LLC's Operating Agreement require the LLC to "make a catchup/priority distribution to its [other] members prior to any additional distributions to Leland or his creditors—including EarthGrains."[98]

EarthGrains contends "[t]here is no evidence that Leland actually received a distribution, because the pledge of LLC property was done in exchange for a $2.1 million promissory note given as consideration."[99] The LLC's pledge of collateral, EarthGrains claims, was a loan from "which it expected repayment with interest from Leland as a return on its investment, rather than a distribution of capital or income to Leland."[100] As further support, EarthGrains points out that the 2008 transaction is not reported as a distribution on Leland's 2008 tax return as would be required if it were a distribution.[101]   In reply, the LLC argues that:

> If, as EarthGrains desires, the 2008 Promissory Note is deemed a validly executed document in 2008, then the Relinquishment Document must necessarily also be deemed a validly executed document in 2008. If the Relinquishment is deemed valid, then Jeri is a 94% owner of the LLC; Leland is a 2% owner of the LLC and the matter is resolved. Otherwise, both documents must be deemed invalid and there is no question that a distribution was previously made to Leland for which Jeri and the other LLC members are entitled to a catch-up distribution.[102]

---

[97] Complaint at 6–7.

[98] LLC's Partial Summary Judgment at 25.

[99] EarthGrains's Memorandum of Law in Opposition to Sycamore Family LLC's Motion for Summary Judgment at 2 [EarthGrains's Opposition], docket no. 69, filed July 30, 2014.

[100] *Id.* at 8.

[101] *Id.* at 4, 8.

[102] Reply to EarthGrains's Memorandum of Law in Opposition to Scyamore [*sic*] Family LLC's Motion for Summary Judgment at 29 [LLC's Reply], docket no. 73, filed August 22, 2014.

The LLC's argument is infirm. The Promissory Note and the Relinquishment Document are not dependent on one another. The Relinquishment Document is invalid due to its failure to meet the transfer requirements of the Operating Agreement.[103] Neither party has argued any deficiencies to render the Promissory Note ineffective. Accordingly, the Promissory Note is valid and enforceable. The Promissory Note plainly demonstrates Leland's intent to repay the amount owing to the LLC, which is sufficient, if not conclusive, evidence that the transaction was a loan, and not a distribution.

Accordingly, the LLC's motion for partial summary judgment on its alternative declaratory relief claim is DENIED.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1.  EarthGrains's Motion[104] for Partial Summary Judgment is DENIED on its fraudulent transfer, alter ego, and nominee liability claims. Also, EarthGrains's motion for partial summary judgment is GRANTED against the LLC on its First Claim for Declaratory Relief, and GRANTED against the LLC on its Second Claim for Declaratory Relief.

2.  Leland's Motion to Strike,[105] incorporated into his Opposition to EarthGrains's Partial Summary Judgment Motion is DENIED. Leland moved to strike arguing that EarthGrains's Partial Summary Judgment violates Utah Local Rule 56-1(b)(2)(C) because there is no concise statement of facts in the entire brief.

---

[103] *See supra* section II(a)(i).

[104] EarthGrains' Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof, docket no. 62, filed June 13, 2014.

[105] Leland Sycamore's Combined Opposition to EarthGrains's Motion for Summary Judgment; Motion to Strike EarthGrains' Motion for Summary Judgment and Joinder in Sycamore's Opposition to EarthGrains's Summary Judgment Motion, docket no. 68, filed July 30, 2014.

Leland's argument lacks substance, as EarthGrains has provided a concise statement of the material facts necessary to meet each element for which EarthGrains's contends no genuine issue exists.[106]

3.    LLC's Motion[107] for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED that EarthGrains shall prepare the form of a declaratory judgment that the Relinquishment Document is not valid.

IT IS FURTHER ORDERED that, on or before January 9, 2015, the parties shall file a joint statement as to the claims remaining and a proposed schedule for resolution of any remaining disputes between these parties. The parties shall file an attorneys' planning meeting report and submit a proposed scheduling order as outlined at

http://www.utd.uscourts.gov/documents/ipt.html.

Dated December 18, 2014.

BY THE COURT:

David Nuffer
United States District Judge

---

[106] *See* EarthGrains's Partial Summary Judgment at 20–29.

[107] Motion for Partial Summary Judgment and Supporting Memorandum, docket no. 61, filed June 13, 2014.